**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JOHN SINGLETON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:24-cv-1543-MAB** |
| | ) | |
| **GARRETT LEPOSKY, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendants Garrett Leposky, Daniel Garcia, Kylan Knight, Tyler Adkins, Brian Evinger, Morgan Giacomo, Claudia Lewis, Kenneth Modglin, and Tyler Howell (Doc. 65). Plaintiff John Singleton never responded to the motion. Despite the lack of opposition from Plaintiff, there are evident issues of fact that preclude the Court from awarding summary judgment to Defendants, and Defendants' motion is therefore denied.

## BACKGROUND

Plaintiff John Singleton, an inmate of the Illinois Department of Corrections, brought this civil action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard Correctional Center. He claims that on January 22, 2024, he was pepper-sprayed and beaten by at least six correctional officers in the "medical building," that left him with severe back pain, a dislocated shoulder, and possible broken ribs (Doc.

1; *see also* Doc. 17). He further claims that he was denied any meaningful medical care for his injuries for months after the assault (Doc. 1; *see also* Doc. 17). Following a threshold review of the Complaint, *see* 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

> **Claim 1:** Eighth Amendment excessive force claim against Defendants Leposky, Modglin, Garcia, Knight, Adkins, and Howell for their alleged assault against Plaintiff on January 22, 2024.
>
> **Claim 2:** Eighth Amendment deliberate indifference claim against Defendants Evinger, Giacomo, and Lewis for their alleged denials of healthcare from January 22, 2024, through August 1, 2024.

(Doc. 17; *see also* Docs. 23, 47).

Defendants filed their motion for summary judgment on the issue of exhaustion, arguing that Plaintiff filed two relevant grievances but neither is aimed at them nor fully exhausted (Doc. 65). Plaintiff did not file a response within the allotted time for doing. *See* SDIL-LR 7.1(b)(1) (allowing 30 days to respond to motion for summary judgment); FED. R. CIV. P. 6(d) (allowing three extra days when motion was served by mail). In fact, Plaintiff has not filed anything with the Court for over a year and a half, since February 2025 (Doc. 45).

## LEGAL STANDARD

Summary judgment is proper if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In instances, like here, where "a nonmovant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment was proper given the undisputed facts,' with those facts taken as usual in the light most favorable to

the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

While the Court ordinarily cannot decide factual disputes on a motion for summary judgment, *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021), when the factual dispute relates to exhaustion of administrative remedies, the Seventh Circuit has instructed that the dispute should be resolved by the judge as a preliminary matter in an evidentiary hearing, as opposed to waiting for a jury to decide at trial. *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Hernandez v. Lee*, 128 F.4th 866, 869 (7th Cir. 2025); *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024).

As for the exhaustion requirement, the Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). *Accord Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("[A] prisoner must comply with the specific procedures and deadlines established by the prison's policy.") (internal quotation marks and citation omitted). For Plaintiff, that meant following the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations' multi-step process requires an inmate to submit the grievance to their counselor and then to the grievance officer, who submits a recommendation to the warden, who provides the inmate with a written decision on the

grievance.[1] *Id.* at § 504.810(a), 504.830(e). If the inmate is unsatisfied with the warden's decision, the inmate can appeal to the Administrative Review Board ("ARB") for a final determination by the Director of the IDOC. *Id.* at § 504.850(a), (d), (e).

An inmate may also request that a grievance be handled as an emergency by submitting the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840. If the warden finds that an emergency exists, then the grievance will be handled on an expedited basis. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified and must resubmit the grievance through the standard grievance process." *Id.*

Because exhaustion is an affirmative defense, "the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable." *Smallwood*, 59 F.4th at 315 (citations omitted).

## FACTS & DISCUSSION

In this case, Plaintiff's failure to respond to Defendants' motion for summary judgment is deemed an admission that Defendants' version of the facts is true. SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."). The Court thus credits Defendant's uncontroverted facts so long as they are properly supported by

[1] There are exceptions to this rule, none of which are of any consequence here. 20 ILL. ADMIN. CODE §§ 504.810, 504.830 (2017).

evidence in the record. *See* FED. R. CIV. P. 56(e)(2); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted). Defendant's facts are also supplemented by additional facts the Court came across in its review of the evidence that were relevant to the issue at hand.

According to Defendants, the Menard "grievance log shows that [Plaintiff] submitted two potentially relevant grievances" between January 22, 2024, when the alleged incident occurred, and June 21, 2024, when Plaintiff filed his Complaint (Doc. 65-2). However, the Court has reviewed the grievance log and believes there are at least two additional grievances that are potentially relevant. Each grievance is discussed in turn below.

**A. Grievance K4-0224-0712**

Defendants claim the first potentially relevant grievance is grievance K4-0224-0712 (Doc. 65, p. 3; Doc. 65-3, pp. 30–32). However, after reviewing this grievance, the Court finds that it is not relevant to the claims in this case. Plaintiff complains in the grievance about an incident with Correctional Officer Harris (Doc. 62-3, pp. 31–32).[2] Essentially, Plaintiff says that he and Harris got into a verbal argument, then Harris shook down Plaintiff's cell and tore all of his stuff up, Plaintiff confronted Harris, who "push[ed] me back as I'm moving forward" and made insulting comments to Plaintiff. Harris commanded Plaintiff to return to his cell, Plaintiff refused, and so Harris took him "back

[2] It is not clear what the date of the incident was. The "date" box at the top of the grievance says January 22, 2024, and it seems like that is likely the date the incident occurred, but Plaintiff's signature at the bottom of the grievance is dated February 1, 2024 (Doc. 65-3, p. 31). According to the grievance log, it was received on February 1, 2024 (Doc. 65-2, p. 9).

downstairs." Plaintiff claims Harris issued him a ticket falsely stating that Plaintiff spit on him.

This grievance is clearly about an incident other than the one described in the Complaint. It describes an incident that occurred just outside of Plaintiff's cell, not in the medical building, with an officer—Harris—who is not a Defendant in this case. While Plaintiff claims that Harris pushed him, that does not remotely resemble the alleged assault that Plaintiff described in the Complaint (*see* Doc. 1, pp. 8–10). Moreover, the grievance does not say anything about being denied medical care for a dislocated shoulder or broken ribs. Consequently, this grievance cannot serve to exhaust as to any of the Defendants on either of Plaintiff's claims.

**B. Grievance K4-6424-2436**

Defendants claim the second potentially relevant grievance is grievance K4-0624-2436, dated May 31, 2024 (Doc. 65-3, pp. 15–17). Plaintiff begins this grievance by stating "January 28, 2024 was the day I entered into this cell after being jumped on an[d] beaten by staff." He states that he was left with a dislocated shoulder and broken ribs but has been denied any medical care since he was sent to segregation, despite his attempts to get care. Plaintiff then goes on to complain about the lack of yard time in the five months that he has been in segregation, the toll it was taking on his mental health, and the ineffective mental health care he was receiving. As relief, Plaintiff asks to be let out of segregation or for the prison to resume running yard like it is supposed to.

This grievance was marked as an emergency, but the warden declined emergency review (Doc. 65-3, p. 16). It was resubmitted through the regular grievance process and

the counselor responded on June 21st (*Id.*). It was then submitted for second level review, and the grievance officer responded on July 12th (*Id.* at p. 15). His recommendation was "mixed"—he recommended denying the issue about the yard but affirming the issue about the lack of medical treatment (*Id.*). The Warden concurred on July 19, 2024 (*Id.*).

Defendants assert that "Plaintiff did not appeal this grievance to the ARB" (Doc. 65, p. 3). But that is not correct—Defendants submitted the ARB's records of the appeal and Plaintiff signed the "Appeal to the Director" on August 1, 2024 (Doc. 65-1, p. 3). The ARB, however, did not receive Plaintiff's appeal until 22 days later, on August 23, 2024 (*see id.* at pp. 2, 3). The ARB returned the grievance without review because it was untimely as it was received a "30 days past date of Chief Administrative Officer's decision." (*Id.* at p. 2).

Defendants argue that this grievance is not fully exhausted because it was rejected as untimely by the ARB (Doc. 65, p. 6). Defendants also argue that the substance of this grievance is insufficient to exhaust as to them because it does not name or otherwise describe them or their supposedly objectionable conduct (*Id.* at pp. 6, 7).

As to the first argument, the Court believes an issue of fact exists as to whether Plaintiff's appeal to the ARB was indeed untimely. Defendants do not offer any facts as to when Plaintiff actually submitted his appeal to be mailed to the ARB (*see* Doc. 65). Given the unhurried way that the mail frequently operates, it is certainly possible that Plaintiff submitted his appeal on time but it arrived late to the ARB through no fault of his own. However, even if the Court assumes that to be true, the Court agrees with Defendants' second argument that the content of the grievance is insufficient to exhaust

as to them.

One of the purposes of the PLRA exhaustion requirement is to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit. *Jones v. Bock*, 549 U.S. 199, 219 (2007); *King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023). To that end, the Illinois Administrative Code requires inmates to file grievances within 60 days of an incident, and to include "factual details regarding each aspect of the offender's complaint, including what happened, when, where" and the name, or at least a description, "of each person . . . involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(a), (c). In short, the grievance must provide sufficient information to identify the who the target of the complaint is and what they did wrong. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (holding inmate failed to exhaust against nurse when grievance implied that he was complaining about doctor's treatment at his current prison, not treatment by nurse at previous prison).

Here, a fair reading of the grievance shows that Plaintiff's core complaint is about being forced to remain in his cell 24 hours a day and with no one to talk to. That is the only thing that he requests any relief on. While the grievance mentions the assault, it was only in a very general way, almost as if Plaintiff was providing background information as to why he was in segregation. But the grievance was not submitted within 60 days of the assault. And Plaintiff did not describe the assault or identify the location where it took place, as he did in the Complaint. Nor did he list any of the officers involved in the assault, as he does in the Complaint. He also did not ask for any relief related to the alleged excessive force, such as for the guards to be punished. In other words, Plaintiff

did not submit this grievance within the timeframe, nor articulate the kind of facts that would be reasonably expected, for the prison to know that he was complaining about any sort of excessive force used by officers and seeking redress for their wrongs. Therefore, this grievance cannot serve to exhaust as to Plaintiff's excessive force claim against Defendants Leposky, Modglin, Garcia, Knight, Adkins, and Howell.

The grievance also mentions the injuries that Plaintiff suffered and that he had not received any medical care, but again did so in a general, informational sort of way. Plaintiff did not describe particular incidents where he tried to get medical care, as he did in the Complaint, nor did he provide any relevant dates or identify the individuals that he talked to. He also did not ask for any relief related to the lack of medical care, such as to see a doctor or for a particular medical treatment. Nevertheless, both the counselor and the grievance officer read Plaintiff's grievance as complaining, in part, about the lack of medical care, and the grievance officer even proactively had Plaintiff scheduled for a future appointment (*see* Doc. 63-5, pp. 15, 16). Despite that, the Court still finds that the grievance is insufficient to exhaust as to Defendants Evinger, Giacomo, and Lewis. There are no facts in the grievance that put the prison on notice that Plaintiff was accusing Defendants Evinger, Giacomo, and Lewis of denying him medical care or what they supposedly did wrong. In other words, the grievance says nothing about what the breakdown was after Plaintiff requested medical care, how and when it occurred, or who was responsible for it. The grievance therefore failed to serve the purpose of the exhaustion requirement because it did not give prison officials any chance to correct the problem with Evinger, Giacomo, and Lewis before Plaintiff filed suit. *See King v. Dart*, 63

F.4th 602, 608 (7th Cir. 2023) (holding that where grievance only stated medical staff was liable for plaintiff's injuries and said nothing about correctional officers being liable, "the allegations in the grievance do not support the claim [plaintiff] pursued in this lawsuit" and "did not give the Jail notice of his claim against [officer] Szul.").

For these reasons, this grievance cannot serve to exhaust as to any of the Defendants on either of Plaintiff's claims.

**C. Other Grievances**

There are two other grievances listed in the grievance log that the Court believes are potentially relevant to the claims in the case. Despite the prison's acknowledged receipt of these grievances, they were not included in the grievance records that Defendants provided to the Court (*see* Doc. 65-3), nor did Defendants address these grievances in their brief (*see* Doc. 65).

The first is grievance K4-0224-0928, which the grievance log indicates was received on February 13, 2024 (Doc. 65-2, p. 3, 9).[3] The date and subject of this grievance—"N2 Medical treatment"— clearly suggest that it could be potentially relevant to Plaintiff's claim against Defendants Evinger, Lewis, or Giacomo. The grievance log also appears to indicate that this grievance went unanswered or was answered in an untimely fashion. Specifically, the log indicates that the grievance was sent to the counselor for review on February 15, 2024 (Doc. 65-2, pp. 3, 9), but the counselor never responded (*see id.* at p. 3), or took over a year to respond (*see id.* at p. 9). This raises the question of whether the

[3] This grievance appears in the grievance log twice, on page 3 and on page 9.

grievance process was rendered unavailable to Plaintiff. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."); *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002) (holding prison officials may not "exploit the exhaustion requirement through indefinite delay in responding to grievances").

The same goes for the second grievance, K4-0324-1298, which the grievance log indicates was received on March 5, 2024, and concerns "N2 Medical/x-rays, staff conduct" (Doc. 65-2, p. 4). Once again, the date and subject of this grievance strongly suggest that it could be potentially relevant to Plaintiff's claims against Defendants (*see also* Doc. 1, p. 11 (alleging that he learned on March 4, 2024 no x-ray had been ordered even though Nurse Morgan Giacomo had told him that she put in for an x-ray). And, once again, the grievance log appears to indicate that this grievance was received but never responded to. Specifically, the log indicates that the grievance was sent to the counselor for review on March 5, 2024 (Doc. 65-2, p. 4), but there is no indication that the counselor ever responded (*see id.*). Again, this raises the question of whether the grievance process was rendered unavailable to Plaintiff

Given the unanswered questions about these two grievances, the Court finds that Defendants have failed to meet their burden of showing there is no dispute of material fact that Plaintiff failed to exhaust his administrative remedies prior to filing suit. Defendants' own records, on their face, suggest there are other relevant grievances that

went unanswered or took a year to respond to, and which Defendants failed to address in their briefing.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendants Garrett Leposky, Daniel Garcia, Kylan Knight, Tyler Adkins, Brian Evinger, Morgan Giacomo, Claudia Lewis, Kenneth Modglin, and Tyler Howell (Doc. 65) is **DENIED.** The stay previously imposed on merits discovery, (*see* Doc. 57), is **LIFTED**. A new schedule setting forth discovery and dispositive motion deadlines will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: September 2, 2026**

Mark A. Beatty

**MARK A. BEATTY**
**United States Magistrate Judge**